**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| ELSA OLIVA, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>FAMILY DOLLAR STORES, LLC, FAMILY DOLLAR, LLC, and DOLLAR TREE, INC.,<br><br>            Defendants. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Elsa Oliva ("Plaintiff"), by and through undersigned counsel, and on behalf of herself and all others similarly situated, alleges as follows against Defendants Family Dollar Stores, LLC, Family Dollar, LLC, and Dollar Tree, Inc. (collectively, "Family Dollar" or "Defendants"), based upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation of counsel:

I.       **BASIC FACTUAL ALLEGATIONS**

1.       This case arises out of Family Dollar's sale of economically worthless products, including pharmaceuticals and medical devices, where the products were adulterated because they were improperly stored outside their labeled temperature range and/or humidity requirements prior to arriving on the shelves of Family Dollar's retail stores in Florida (the "Products"), and as a result customers purchased Products that, unknown to them but known to Family Dollar, could not lawfully be sold, were unsafe for human use or ingestion, and were defective.

2.       Family Dollar distributes and sells over-the-counter ("OTC") pharmaceuticals

and medical devices to consumers in Florida in more than 500 brick-and-mortar retail locations.[1]

3.       Family Dollar markets to low- and fixed-income consumers to sell them basic personal health care products at affordable prices.[2] The placement of Family Dollar stores in underserved communities and their driving out of local competition means low- and fixed-income consumers often rely on Family Dollar stores for their basic daily consumption.[3]

4.       Nevertheless, Family Dollar cut corners and unlawfully and knowingly distributed and sold tens of millions of dollars of adulterated OTC drugs and medical devices to these low- and fixed-income consumers. If Plaintiff and those similarly situated had known the truth, they would not have purchased the Products (or at minimum would have paid less), because they could not rely on the Products' safety or effectiveness.

5.       A report issued by the U.S. Food and Drug Administration ("FDA") in February 2022 about a Family Dollar facility in West Memphis, Arkansas, for its observations of an enormous rodent infestation, resulted in a recall; temporary closure of 404 Family Dollar stores in 6 states;[4] multidistrict litigation in the Western District of Tennessee, which has since settled for consumers who purchased products between January 2021 and February 2022;[5] and a record $41.7 million criminal penalty in a food safety case, announced by the U.S. Department of Justice on

---

[1] Family Dollar, *Store Locations in Florida*, https://www.familydollar.com/locations/fl/ (last visited Feb. 25, 2024).
[2] *See* Family Dollar, *Our Brands*, https://corporate.dollartree.com/about/our-brands/family-dollar (last visited Feb. 25, 2024).
[3] *See* Nathaniel Meyersohn, *Dollar stores are everywhere. That's a problem for poor Americans*, CNN BUSINESS (July 19, 2019), https://www.cnn.com/2019/07/19/business/dollar-general-opposition/index.html (last visited Feb. 25, 2024).
[4] Sam Tabahriti, *Family Dollar is temporarily closing 404 stores after more than 1,000 dead rats were found in a distribution center*, BUSINESS INSIDER (Feb. 23, 2022) https://www.businessinsider.com/family-dollar-indefinitely-closed-stores-finding-thousands-rodents-2022-2 (last visited Feb. 25, 2024).
[5] *In re: Family Dollar Stores, Inc. Pest Infestation Litig.*, No. 22:md-03032 (W.D. Tenn.), D.E. 181-1.

February 27, 2024.[6]

6.      The February 2022 FDA Report already contained warnings that "[d]rug products are not stored under appropriate conditions of temperature and humidity so that their identity, strength, quality, and purity are not affected."[7] Further:

> Specifically, your firm does not monitor nor control temperature or humidity with your warehouse. Your firm stores drug products on various levels within the warehouse where temperatures can exceed [redacted]°F at the floor level during the summer months and reach higher temperatures in the upper levels of the warehouse.
>
> Your Facility Manager stated he has seen temperatures that can be as high as [redacted]°F in the upper parts of the Distribution Center using [redacted]. He stated he does not document when he checks temperatures, and your firm has no written procedure regarding this practice.
>
> We observed several drug products that were labeled with storage temperatures of 20-25°C (68-77°F) with some stating to "protect from moisture," "avoid high humidity" and/or "avoid excessive heat." These products include Extra Strength Tylenol Rapid Release Gelcaps, Family Wellness brand Maximum Strength Cold & Flu softgels, and Good Sense brand Omeprazole Delayed Release Tablets 20mg.[8]

7.      Regardless of and even long after the FDA's warnings, Family Dollar continued to store products outside their labeled temperature requirements and ship them to retail stores in Florida,[9] which it admitted, through the following voluntary recalls of its products already shipped to retail locations in Florida which each occurred *after* May 1, 2022:

a.      On July 21, 2022, Family Dollar announced a retail-level product recall of 434 adulterated and unsafe FDA-regulated OTC drug products, shipped to its stores "on or

---

[6] The Associated Press, *Family Dollar agrees to pay $41.7m for rodent-infested warehouse, the largest-ever monetary criminal penalty food safety case, DOJ says*, FORTUNE (Feb. 27, 2024), https://fortune.com/2024/02/27/family-dollar-agrees-pay-417m-rodent-infested-warehouse-largest-ever-monetary-criminal-penalty-food-safety-case-doj/ (last visited Feb. 27, 2024).

[7] U.S. Dep't of Health & Human Servs., *Inspectional Observations*, at 19 (Observation 11), available at https://www.fda.gov/media/156960/download (last visited Feb. 25, 2024).

[8] *Id.* at 20 (Observation 11).

[9] *Hundreds of Family Dollar Products Recalled After Temperature Concerns*, NEWSWEEK (July 21, 2022), https://www.newsweek.com/hundreds-family-dollar-products-recalled-temperature-concerns-1726926 (last visited Feb. 25, 2024).

around May 1, 2022 through June 10, 2022 due to product being stored outside of labeled temperature requirements;"[10] and

    b.    On August 5, 2022, Family Dollar announced a retail-level product recall of 41 adulterated FDA-regulated medical device products (including, for example, pregnancy tests, saline nasal spray, and denture cleansing products), shipped to its stores "on or around May 1, 2022 through June 10, 2022 due to product being stored outside of labeled temperature requirements."[11]

8.    On November 8, 2022, the FDA issued a "Warning Letter" to then-CEO of Dollar Tree Michael Witynski following up on the observations expounded in the February 2022 report. The Warning Letter admonished: "Your firm should investigate and determine the causes of any violations and take prompt actions to correct any violations and bring the products into compliance. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations."[12]

9.    Undeterred by the Warning Letter, Family Dollar subsequently admitted further violations through the following additional voluntary recalls of its products already shipped to retail locations in Florida[13]:

---

[10] *Company Announcement: Voluntary Recall of Certain Over-the-Counter Products*, FDA (July 21, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/voluntary-recall-certain-over-counter-products (last visited Feb. 25, 2024).

[11] *Company Announcement: Voluntary Recall of Certain Over-the-Counter Products Sold at Family Dollar Stores Because They Were Stored Outside of Temperature Requirements*, FDA (September 16, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/voluntary-recall-certain-over-counter-products-sold-family-dollar-stores-because-they-were-stored (last visited Feb. 25, 2024).

[12] *Warning Letter: Dollar Tree, Inc.*, FDA (Nov. 8, 2022), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/dollar-tree-inc-629509-11082022 (last visited Feb. 25, 2024).

[13] Lauren McCarthy, *Family Dollar Recalls Hundreds of Products Sold in 23 States*, THE NEW YORK TIMES (Oct. 14, 2023), https://www.nytimes.com/2023/10/14/business/family-dollar-recall.html (last visited Feb. 25, 2024); Aaron Kassraie, *Family Dollar Recalls More Than 300*

4

a.      On May 4, 2023, Family Dollar announced a retail-level product recall of 7 adulterated FDA-regulated OTC drug products shipped to its stores "on or around June 1, 2022 through March 31, 2023 due to product being stored outside of labeled temperature requirements;"[14] and

b.      On October 5, 2023, Family Dollar announced a retail-level product recall of 291 adulterated FDA-regulated OTC drug products shipped to its stores "on or around June 1, 2023" and sold through October 4, 2023 where the products were "stored outside of labeled temperature requirements by Family Dollar."[15]

10.     Products that are stored outside of labeled temperature requirements suffer from decreased efficacy and life expectancy.[16] Proper storage of pharmaceutical products is important to ensure the identity, strength, quality, and purity of the products are not affected.

11.     Because Family Dollar actively concealed material safety information from customers, customers bought the Products in reliance on the numerous express and implied promises, representations, assurances and/or affirmations from Family Dollar.

12.     Family Dollar's failure to store the Products in their labeled temperature and

---

*OTC Health Products*, AARP (Oct. 11, 2023), https://www.usatoday.com/story/money/2023/10/11/family-dollar-recalls-medicine-devices/71141211007/ (last visited Feb. 25, 2024).

[14] *Company Announcement: Voluntary Recall of Certain Over-the-Counter Drug Products Because the Products Have Been Stored Outside of Labeled Temperature Requirements*, FDA (May 4, 2023), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/family-dollar-initiating-voluntary-recall-certain-over-counter-drug-products-because-products-have (last visited Feb. 25, 2024).

[15] *Company Announcement: Voluntary Recall of Certain Over-the-Counter Drugs and Medical Devices*, FDA (Oct. 5, 2023), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/voluntary-recall-certain-over-counter-drugs-and-medical-devices (last visited Feb. 25, 2024).

[16] *Medication Storage Temperature Guidelines – What Is Safe?* (Aug. 7, 2023), available at https://www.baystatehealth.org/news/2014/07/medication-storage-temperature-guidelines; GMP Trends, *Are your products being stored under appropriate conditions?*, available at https://gmptrends.com/proper-storage-of-pharmaceutical-products/.

humidity requirements and nevertheless sell them without disclosing their likely adulteration is unfair and deceptive conduct.

13.     Plaintiff and Class Members were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and Family Dollar failed to warn consumers of this fact. Such illegally sold products are worthless and have no value.

14.     Plaintiff and Class Members bargained for Products safe and effective for their intended use and were deprived the basis of their bargain when Family Dollar sold them Products stored outside their labeled temperature and humidity requirements, rendering the Products unmerchantable and unfit for use.

15.     Accordingly, Family Dollar should not have sold any of the Products from May 1, 2022 through the present ("Class Period"). Moreover, based on Family Dollar's business practices, there is a risk of future violations, and it is likely that Family Dollar is currently continuing to distribute and sell products stored at extreme temperatures outside of labeled requirements.

16.     Plaintiff, on behalf of herself and those similarly situated, brings claims for negligence and negligence *per se*, breach of implied warranty, unjust enrichment, and violation of the Florida Unfair & Deceptive Trade Practices Act. Plaintiff seeks damages, injunctive and declaratory relief, interest, costs and reasonable attorneys' fees.

## II.   PARTIES

17.     Plaintiff Elsa Oliva is and was at all relevant times a citizen of the State of Florida residing in Broward County.

18.     Defendant Family Dollar Stores, LLC is organized under the laws of Delaware with its headquarters and principal place of business located at 500 Volvo Parkway, Chesapeake,

VA 23320.

19.     Defendant Family Dollar, LLC is organized under the laws of North Carolina with its headquarters and principal place of business located at 500 Volvo Parkway, Chesapeake, VA 23320.

20.     Defendant Dollar Tree, Inc. is organized under the laws of Virginia with its headquarters and principal place of business located at 500 Volvo Parkway, Chesapeake, VA 23320. It is the parent company and owner of Family Dollar Stores LLC, and Family Dollar, LLC, after it acquired them on July 6, 2015.[17]

## III.    JURISDICTION & VENUE

21.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified as 28 U.S.C. § 1332(d)(2). The Plaintiff and one or more of the class of Plaintiff are diverse from at least one of Family Dollar's members. Further, Plaintiff alleges that the matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs, and that the number of class members is greater than 100.

22.     The Court has personal jurisdiction over Defendants as to this case because they conduct business in Florida through, with a footprint of more than 500 Family Dollar retail stores, at which Plaintiff and putative Class Members purchased Products.

23.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. Family Dollar caused the Products to be offered for sale and sold to Plaintiff in this District.

---

[17] *Our Dollar Tree, Inc. Story*, https://corporate.dollartree.com/about/our-history (last visited Feb. 25, 2024).

IV.     **ADDITIONAL FACTUAL ALLEGATIONS**

A.      **The Federal Food, Drug, and Cosmetic Act (FDCA) and FDA Regulations**

24.     The production, sale, and distribution of drugs and medical devices are regulated by the FDA under authority granted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 22 U.S.C. § 300 *et seq.*

25.     Under the FDCA, it is illegal to adulterate a drug or medical device or to introduce into interstate commerce an adulterated drug or medical device. A drug is adulterated if "the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding to not conform to or are not operated or administered in conformity with [current good manufacturing practice]." 21 U.S.C. § 351(a)(2)(B); *see also* 21 C.F.R. § 820 *et seq.* (same for medical devices).

26.     Current good manufacturing practices for the facilities that hold a drug so that the drug is safe, has the identity and strength, and meets the quality and purity characteristics it purports or is represented to possess, *see* 21 C.F.R. § 210.0(a), include prohibiting the distribution or sale of adulterated and/or misbranded drugs in the Untied States. *See* 21 U.S.C. §§ 331(a), 351(a)(2)(B).

27.     Examples of how a drug may be adulterated and/or misbranded under FDA regulations include where it has been "held under unsanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health," 21 U.S.C. § 351(a)(2)(A), or where "the methods used in, or the facilities or controls used for . . . its holding do not conform to or are not operated or administered in conformity with current good manufacturing practice . . . as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess." *Id.* § 351(a)(2)(B).

8

28.      According to the FDA, storing drugs, medical devices, and medications outside of required temperature ranges risk harmful adulterations of the products. For example, it decreases the products' life expectancy, which can lead to a "risk of bacterial growth."[18]

29.      "Once the expiration date has passed there is no guarantee that the medicine will be safe and effective. If your medicine has expired, do not use it."[19]

**B.      Family Dollar's Routine Sales of Adulterated OTC Drugs and Medical Devices**

30.      On information and belief, Family Dollar did not change its product storage practices in response to the FDA's February 2022 Inspectional Report or the FDA's November 8, 2022 Warning Letter, and to the present has not changed its practices. Rather, it continues to shift the cost of the adulterated Products onto its low- or fixed-income customers.

31.      On four successive occasions after May 1, 2022, Family Dollar has admitted through announcements of voluntary recalls of products already shipped to retail locations in Florida.

**1.      Sales of adulterated Products May 1, 2022 through July 21, 2022**

32.      Between about May 1, 2022 and July 21, 2022, Family Dollar introduced into interstate commerce and sold 434 adulterated, unsafe, and defective FDA-regulated OTC pharmaceuticals to consumers, including through its network of 500+ stores in Florida.

33.      The products included, *inter alia*, DayQuil, Alka Seltzer, "Pepcid Complete Chewable Tablets," "Dr. Scholls Anti-Fungal Spray Powder," "Icy Hot Lidocaine Cream," "Zarbees Natural Child Cough and Mucus Relief Syrup Grape," "Tylenol Child Grape Syrup," "Pepcid AC Maximum Strength," "Good Sense Ibuprofen," "Mucinex Fastmax Cold & Flu 4

---

[18] *Don't Be Tempted to Use Expired Medicines*, FDA, https://www.fda.gov/drugs/special-features/dont-be-tempted-use-expired-medicines (last visited Feb. 25, 2024).
[19] *Id.*

Caplets," "Pepto Bismol Original," Vicks Vaporub, and "Voltaren Arthritis Pain Relief Gel."

### 2.      Sales of adulterated Products May 1, 2022 through August 5, 2022

34.      Between about May 1, 2022 and August 5, 2022, Family Dollar introduced into interstate commerce and sold 41 adulterated, unsafe, and defective FDA-regulated medical devices to consumers, including through its network of 500+ stores in Florida.

35.      The products included, *inter alia*, pregnancy tests, condoms, a UTI test product, a first aid kit, "New Skin Liquid Bandage Clear," denture cleansing products, and teeth whitening products.

### 3.      Sales of adulterated Products June 1, 2022 through May 4, 2023

36.      Between about June 1, 2022 and May 4, 2023, Family Dollar introduced into interstate commerce and sold 7 adulterated, unsafe, and defective FDA-regulated OTC pharmaceuticals to consumers, including through its network of 500+ stores in Florida.

37.      The products were 7 products of Advil ibuprofen pills, sold in different pill forms and dosages.

### 4.      Sales of adulterated Products June 1, 2023 through October 5, 2023

38.      Between about June 1, 2023 and October 5, 2023, Family Dollar introduced into interstate commerce and sold 291 adulterated, unsafe, and defective FDA-regulated OTC pharmaceuticals and medical devices to consumers, including through its network of 500+ stores in Florida.

39.      The products included, *inter alia*, Nyquil and Dayquil, pregnancy tests, Aleve products, Tylenol products, "Motrin Infant Drops Berry," denture cleansing products, Alka Seltzer, Pepto Bismol, Miralax, "Pepto Chewtab Children Bubblegum," "Benadryl ES Allergy Tablets," and "Pepto Kids Gummies."

40.     Had Plaintiff, the Class, and the consuming public known that the Products were stored outside their labeled temperature and humidity requirements, they would not have purchased the Products.

**C.     Family Dollar's Failure to Contact Customers about the Recalls and Institute Refund Programs**

41.     On information and belief, Family Dollar did not reach out to its customers about the recalled products, including via general email lists or lists connected to specific promotions.

42.     Instead, the recalls required the customers to return the products to the Family Dollar store where they were purchased, despite that they were consumable products. Even then they would not know from the recall notices which stores were affected, and there is no indication they would get a refund at all, rather than the same adulterated products they are returning.

43.     Moreover, to return an affected Product, it is the consumer who would have to inspect the lists of products and identifying whether a product they purchased was affected by the recalls.

44.     Therefore, even with the nominal "recall" notices, Family Dollar was still able to retain the millions of dollars it made from selling the adulterated and worthless Products to its customers.

**V.     PLAINTIFF'S ALLEGATIONS**

45.     Plaintiff Elsa Oliva is, and at all times relevant hereto has been, a resident of Hallendale, Florida. During the Class Period, Ms. Oliva purchased various adulterated Products, including but not limited to: (a) Nyquil Cherry Cold & Flu 12 fl oz.; (b) Dayquil Liquid Cold & Flu 12 fl oz.; (c) Tylenol PM 24 Caplets; (d) Mucinex Fastmax Cold & Flu 4 caplets; and (e) Pepto Bismol Original Liquid 16 Fl Oz., from the following Family Dollar stores: #6458, in

Hallendale, Florida, and #10515, #8250, #11015, #8601, and #2000 in Hollywood, Florida.

46.     As a reasonable consumer, Plaintiff believed that the products were stored within their labeled temperature requirements. She viewed the front-facing labels of the Products she purchased and, absent any indication to the contrary, she believed that the Products were safe and effective under ordinary use. Plaintiff relied on Family Dollar's omissions in purchasing the Products.

47.     Had Plaintiff been made aware of the improper storage of the Products, she would not have purchased them, because she could not rely on their safety or effectiveness for their intended use.

48.     Plaintiff would purchase similar products from Family Dollar in the future if she could rely on the products not having been stored outside the labeled temperature requirements.

## VI.     TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

49.     Any applicable statutes of limitation have been tolled by the discovery doctrine and Family Dollar's knowing and active concealment of the defect.

50.     Through no fault or lack of diligence, Plaintiff and Class Members were deceived regarding the defect and could not reasonably discover the defect or Family Dollar's deception with respect to the defect.

51.     Prior to purchasing the Products, Plaintiff and Class Members had no reasonable way of knowing about the Products' adulteration through improper storage. Further, Plaintiff and Class Members did not discover and did not know facts that would have caused a reasonable person to suspect that Family Dollar was engaged in the conduct alleged herein.

52.     Plaintiff and the Class justifiably relied on Family Dollar to disclose the true

nature of the Products they purchased because that defect was not discoverable through reasonable effort.

53.     Upon information and belief, Family Dollar intended its acts to conceal the facts and claims from Plaintiff and Class Members. Plaintiff and Class Members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Family Dollar's conduct.

54.     For these reasons, all applicable statutes of limitation were tolled based on the discovery rule and Family Dollar's active concealment.

## VII.   CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of herself and the following Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). Specifically, the Class is defined as:

> All persons who resided in Florida who purchased a Product for personal use and not for resale from a Family Dollar store in Florida from May 1, 2022, through the date of class certification.

56.     Excluded from the Class are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of any Defendant or any entity in which a Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for any Defendants, (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members, and (d) any person who received a full and complete refund for their purchase prior to the filing of this action.

57.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

58.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims, and because Plaintiff otherwise meets the requirements of Federal Rule of Civil Procedure 23, as alleged below.

59.      **Numerosity.** The Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, Class Members number in the thousands to hundreds of thousands and are geographically disbursed throughout the United States. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The number of Class Members is presently unknown to Plaintiff but may be ascertained from Family Dollar's books and records and/or from information and records in the possession of Family Dollar's third-party retailers and distributors. Class Members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

60.      **Commonality and Predominance.** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Such common questions of law or fact include, but are not limited to, the following:

a.      Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

b.      Whether Defendants' conduct was unfair and/or deceptive;

c.      Whether Defendants breached an implied warranty;

d.      Whether Defendants have been unjustly enriched as a result of the unlawful conduct alleged herein such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and Class Members;

e.      Whether Plaintiff and Class Members have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages; and

f.      Whether an injunction is necessary to prevent Defendant from continuing

to market and sell defective and adulterated Products that contain benzene, a known human carcinogen.

61.     Family Dollar engaged in a common course of conduct giving rise to the legal rights that Plaintiff seek to enforce. Similar or identical statutory and common law violations, business practices, and injuries are involved. These common questions, and the common answers they will generate, predominate in both quality and quantity over any individual issues that may exist.

62.     **Typicality.** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all Class Members were injured in the same way through Family Dollar's uniform misconduct, as described above.

63.     **Adequacy of Representation.** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of the other Class Members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff.

64.     **Injunctive Relief.** The elements of Rule 23(b)(2) are met here. Family Dollar will continue to commit the unlawful practices alleged herein. Family Dollar has acted or refused to act on grounds generally applicable to Plaintiff and the Class, thereby making appropriate final injunctive relief and declaratory relief, as requested in the Prayer for Relief below, with respect to the Class as a whole.

65.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment

suffered by Plaintiff and the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the Class to individually seek redress for Family Dollar's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Negligence and Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

66.     Plaintiff realleges and incorporates by reference all allegations raised in the paragraphs 1 through 65 as if fully stated herein.

67.     At all relevant times, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in the marketing, storage, distribution, and sale of the Products, including a duty to follow FDCA requirements by storing the Products within labeled temperature requirements, and by not selling the Products in their adulterated states.

68.     Defendants owed a duty to Plaintiff and Class Members not to unlawfully sell the Products that were unsafe and defective for their intended purpose. In particular, Defendants had a duty to comply with the FDCA, 21 U.S.C. § 331 *et seq.*, which prohibits the introduction of adulterated products into interstate commerce.

69.     Defendants owed a duty to Plaintiff and Class Members to advise them of their right to a refund, and to carry out a refund program at their stores.

16

70. Defendants breached their duties to Plaintiff and Class Members by (a) unlawfully storing the Products outside their labeled temperature requirements; (b) unlawfully selling products that were unsafe and ineffective for their intended purposes; (c) violating requirements of the FDCA, 21 U.S.C. § 331 *et seq.* by introducing the Products into interstate commerce; (d) failing to take steps necessary to discontinue storing and/or selling the Products; and (e) failing to advise customers of their right to a refund.

71. When Plaintiff and Class Members purchased the Products, they were unaware that the Products could not lawfully be sold and were unsafe or ineffective for their intended purpose.

72. After their purchase and following the recalls, Plaintiff and Class Members were unaware of their right to a refund.

73. As a direct and proximate result of Family Dollar's negligence, Plaintiff and Class Members have suffered, and will continue to suffer, damages in an amount to be proven at trial.

**COUNT II**
**Breach of Implied Warranty, Fla. Stat. § 672.314**
**(On Behalf of Plaintiff and the Class)**

74. Plaintiff realleges and incorporates by reference all allegations raised in the paragraphs 1 through 65 as if fully stated herein.

75. Florida law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314(1).

76. Family Dollar is and was at all relevant times a "merchant" as defined by Fla. Stat. § 672.104(1).

77.     Plaintiff and Class Members purchased Products manufactured and marketed by Family Dollar by and through Family Dollar's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Family Dollar's contracts with authorized sellers, or eventual purchasers when bought from a third party.

78.     At all relevant times, Family Dollar was a merchant, manufacturer, marketer, warrantor, and/or seller of the Products. Family Dollar knew or had reason to know of the specific use for which the Products were purchased.

79.     The Products are and were at all relevant times goods within the meaning of Fla. Stat. § 672.105(1).

80.     Family Dollar impliedly warranted that the Products (1) were in merchantable condition and fit for its ordinary purpose, (2) would pass without objection in the trade, (3) be of fair and average quality, and (4) conform to the promises and affirmations made by Defendants.

81.     However, when sold, and at all times thereafter, the Products were not in merchantable condition, and were not fit for their ordinary purposes. Thus, Family Dollar breached its implied warranty of merchantability for the ordinary purpose for which the Products are purchased and used.

82.     Additionally, the Products would not pass without objection in the trade because of the failure to comply with the labeled temperature and humidity requirements.

83.     Nor do the Products conform to the affirmations on their labels, because they have already been stored contrary to their labeled requirements.

84.     Plaintiff and Class Members had sufficient direct dealings with Family Dollar to establish privity of contract between Defendants, on one hand, and Plaintiff and Class Members, on the other.

85.     Plaintiff and Class Members were the intended beneficiaries of Defendants' implied warranties and Plaintiff and Class Members did not alter the adulterated Products.

86.     Family Dollar was put on notice about its breaches through the FDA's February 2022 Inspectional Observations.

87.     Family Dollar cannot disclaim its implied warranty as it knowingly sold unsafe and ineffective Products.

88.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## COUNT III
### Unjust Enrichment
**(On Behalf of Plaintiff and the Class)**

89.     Plaintiff realleges and incorporates by reference all allegations raised in the paragraphs 1 through 65 as if fully stated herein.

90.     Plaintiff and Class Members conferred benefits on Defendants in the form of monies paid to purchase Defendants' defective and worthless Products.

91.     Defendants voluntarily accepted and retained this benefit.

92.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unsafe and unfit for their intended purpose, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

93.     Defendants received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff sand Class Members because they purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

94.     Defendants were unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and Class Members. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Products had they known the true facts.

95.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**Violation of the Florida Unfair & Deceptive Trade Practices Act**
**Fla. Stat. §§ 501.201 *et seq.***
**(On Behalf of Plaintiff and the Class)**

96.     Plaintiff realleges and incorporates by reference all allegations raised in the paragraphs 1 through 65 as if fully stated herein.

97.     Plaintiff and Class Members are "consumers" as defined by Fla. Stat. § 501.203.

98.     Family Dollar advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly affecting the people of Florida.

99.     Family Dollar engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

100.    Family Dollar's omissions as alleged herein were material because they were likely to deceive reasonable consumers.

101.    Family Dollar knowingly and willfully concealed and suppressed material facts regarding the Products, namely, their storage outside the labeled temperature and humidity requirements as described above.

102.    Family Dollar's omissions of material facts were made to Plaintiff and the Class

each time they purchased the Products.

103.    Family Dollar knew that these omissions were material. Whether a retailer's products are safe and reliable, and whether that retailer stands behind the products it sells, are material concerns to a consumer.

104.    Family Dollar intended that its omissions of material facts would induce Plaintiff and Class Members to purchase the Products.

105.    Plaintiff and Class Members reasonably relied on the omissions of material facts regarding the Products as described above.

106.    Plaintiff and Class Members would not have purchased, or at minimum would not have paid as much for Family Dollar's Products had they been accurately marketed and sold.

107.    Plaintiff and Class Members did not know that their Products were sold after being stored outside their labeled temperature and/or humidity requirements. Nor could Plaintiff and the Class have discovered these concealed facts through reasonably diligent investigation.

108.    Plaintiff and Class Members acted reasonably in relying on Family Dollar's omissions, the truth of which they could not have discovered.

109.    As a direct and proximate result of Family Dollar's deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

110.    Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Class and Plaintiff's attorneys as Class Counsel;

B.      For an order declaring the Defendants' conduct violates the causes of action referenced herein;

C.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Plaintiff demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all claims in this Complaint so triable.

Dated: March 1, 2024.                           Respectfully submitted,

                                                */s/ Jeff Ostrow*
                                                Jeff Ostrow FBN 121452
                                                Steven Sukert  FBN 1022912
                                                **KOPELOWITZ OSTROW P.A.**

One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com
sukert@kolawyers.com

Mariya Weekes FBN 66299
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
mweekes@milberg.com

*Attorneys for Plaintiff and the Class*